## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CERTAIN UNDERWRITERS AT LLOYD'S LONDON and CERTAIN INSURANCE COMPANIES SUBSCRIBING TO POLICY ME1710087, individually and as subrogees of DEVON ENERGY PRODUCTION COMPANY, L.P., et al, | ) ) ) ) ) ) ) ) ) | |
| **Plaintiffs,** | ) ) | |
| v. | ) ) | **Case No. CIV-22-640-G** |
| CAMERON INTERNATIONAL CORPORATION, | ) ) ) ) | |
| **Defendant.** | ) | |

## <u>ORDER</u>

Now before the Court is a Motion to Remand (Doc. No. 32) filed by Plaintiffs BPX

Operating Company ("BPX") and Zurich American Insurance Company ("Zurich").

Plaintiffs Devon Energy Production Company, L.P. ("Devon") and Devon's Insurers[1] join

in this Motion to Remand.  *See* Doc. No. 33.  The removing party, Defendant Cameron

International Corporation ("Cameron") has submitted a Response in Opposition (Doc. No.

63).  Plaintiffs Zurich and BPX have filed a Reply (Doc. No. 67), and Defendant has

---

[1] Devon's Insurers are Certain Underwriters at Lloyd's London and Certain Insurance Companies subscribing to London Energy Package Policy No. ME1710087. Devon's Insurers include Lloyd's Syndicates 457, 2003, 2987, 609, 4020, 3000 1884, 3902, 3030, 1183, 2121, 5000, 1995, 1221, 1200, 1225, 1414, 510, 2001, 9094, and 1274, Houston Casualty Co., Hudson Specialty Insurance Co., Navigators Insurance Co, Arch Houston Casualty Co., (Europe) Ltd., and Allianz Global Corporate and Specialty.  Doc. No. 33, at 1.

submitted a Sur-reply (Doc. No. 71).  Having reviewed the parties' filings, the Court makes its determination.

I.      *Background*

Plaintiffs initially filed this action in the District Court of Oklahoma County, Oklahoma, on June 30, 2022.  *See* Pet. (Doc. No. 1-2).  On July 29, 2022, Plaintiffs filed their First Amended Petition and Defendant removed the lawsuit to this Court that same day.  *See* Am. Pet. (Doc. No. 1-4); Notice of Removal (Doc. No. 1).  In the First Amended Petition,[2] Plaintiffs allege that BPX and Devon each own a 50% working interest in the Migura B– Lanik A SA 2 2H Well located in DeWitt County, Texas (the "Migura Well") governed by a Joint Operating Agreement.  *See id.* ¶¶ 9-10; Pls.' Mot. at 8-9.

Devon and Cameron entered into a Master Services and Supply Agreement (the "MSSA"), under which Cameron agreed to provide, install, and test a tubing hanger.  *See* Am. Pet. ¶¶ 11-12.  Plaintiffs allege that Cameron failed to properly install, lock, and test the tubing hanger and that Cameron's agent either negligently or intentionally misrepresented that they had performed all the required measurements and that the tubing hanger was successfully locked in place.  *See id.* ¶¶ 18-19.  Plaintiffs represent that shortly after Cameron installed the tubing hanger, hydrocarbons began leaking from Cameron's equipment, and efforts to stop the release were ineffective.  *Id.* ¶ 20.  Devon then attempted

---

[2] After filing their Motion for Remand, Plaintiffs filed an Amended Complaint with Cameron's written consent.  *See* Am. Compl. (Doc. No. 38); *see also* Doc. No. 66, at 2. The Court references here the allegations in Plaintiffs' Amended Petition (Doc. No. 1-4) for background purposes, which are substantially the same as those pled in Plaintiffs' Amended Complaint (Doc. No. 38).

to kill the Migura Well, but the well could not be killed.  *Id.* ¶ 22.  Instead, condensate, other hydrocarbons, water, and sand continued spewing through a test port in the tubing hanger assembly.  *Id.*  In response, Devon retained contractors and consultants to bring the Migura Well under control and to evaluate, cleanup, and remediate the hydrocarbons and gas condensate that had been released.  *See id.* ¶ 23.  Devon advanced payment for the expenses relating to bringing the Migura Well under control and BPX has since paid Devon BPX's 50% working interest share of those expenses.  *Id.* ¶ 30; Pls.' Mot. at 10.

Three weeks after the spill began, the Migura Well was brought under control.  Am. Pet. ¶ 24.  Following the well-control incident, a group of local property owners filed suit in Dewitt County, Texas against Devon, BPX, and Cameron for damages arising out of this incident.  *Id.* ¶ 26.  Devon, BPX, and Cameron eventually agreed to fund a settlement with the property owners and agreed that, after funding this settlement, Devon, BPX, and Cameron would participate in a mutual "true-up" in which they would arrive at a final resolution of the amount of the settlement to be borne by each of them.  *See id*; Pls.' Mot. at 11.

Per Plaintiffs, the true-up action—originally filed in Oklahoma County District Court and then removed—is the action now before the Court.  *See* Pls.' Mot. at 11. Following removal, Plaintiffs BPX and Zurich timely moved to remand this action to state

court, with the Devon Plaintiffs joining in the Motion to Remand. *See* Pls.' Mot. (Doc. No. 32); Doc. No. 33.

II.       *Diversity Jurisdiction Under 28 U.S.C. § 1332(a)*

Jurisdiction under 28 U.S.C. § 1332(a) requires complete diversity among the parties—*i.e.,* the citizenship of all defendants must be different from the citizenship of all plaintiffs. *McPhail v. Deere & Co.*, 529 F.3d 947, 951 (10th Cir. 2008). The party or parties invoking diversity jurisdiction—here, Cameron—has the "burden of proving [diversity jurisdiction] by a preponderance of the evidence." *Middleton v. Stephenson*, 749 F.3d 1197, 1200 (10th Cir. 2014).

Devon is a citizen of Oklahoma. *See* Notice of Removal ¶ 14; Am. Pet. ¶ 3. BPX is a citizen of Texas. Am. Pet. ¶ 4. Zurich is a citizen of New York. *Id.* ¶ 2. Devon's Insurers are incorporated under the laws of the United States, the United Kingdom, and other foreign countries. *See id.* ¶ 1. Cameron is a citizen of Texas and Delaware. *See id.* ¶ 5.

Because Plaintiff BPX and Defendant Cameron are citizens of the same state, it would appear that there is not complete diversity to support federal jurisdiction under § 1332. Defendants contend, however, that Plaintiff BPX has been fraudulently joined.[3]

III.      *Application of the Fraudulent Joinder Doctrine to Plaintiff BPX*

Before the Court can determine whether BPX has been fraudulently joined, the Court must address the threshold issue of whether the doctrine of fraudulent joinder can be

---

[3] In its Sur-reply, Cameron argues that the Court should first address its Motion to Dismiss (Doc. No. 62), which, in part, seeks dismissal of BPX's claims for lack of personal

applied to a plaintiff.  The fraudulent joinder doctrine permits a federal court to disregard the citizenship of a non-diverse defendant against whom the plaintiff has not asserted or cannot assert a colorable claim for relief.  *See Dutcher v. Matheson*, 733 F.3d 980, 988 (10th Cir. 2013).  "To establish fraudulent joinder, the removing party must demonstrate either: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court."  *Dutcher*, 733 F.3d at 988 (alteration and internal quotation marks omitted); *see also Hernandez v. Liberty Ins. Corp.*, 73 F. Supp. 3d 1332, 1336 (W.D. Okla. 2014).  "The defendant seeking removal bears a heavy burden of proving fraudulent joinder, and all factual and legal issues must be resolved in favor of the plaintiff."  *Dutcher*, 733 F.3d at 988 (internal quotation marks omitted).

The Tenth Circuit has not addressed the application of the fraudulent joinder doctrine to a non-diverse plaintiff.  *See* Pls.' Mot. at 15 (agreeing that fraudulent joinder of a plaintiff has not been discussed by 10th Circuit); Def.'s Resp. at 16-17 (same).  The district courts across the country that have addressed the issue disagree.  *Compare Myers Indus., Inc. v. Young*, No. CIV-13-01278, 2013 WL 4431250, at *3 (N.D. Ohio Aug. 16, 2013) (declining to apply the fraudulent joinder doctrine to plaintiffs), *with Taco Bell Corp.*

_____

jurisdiction.  *See* Def.'s Sur-reply (Doc. No. 71) at 1-2.  Whether this Court has subject-matter jurisdiction is a threshold issue, however.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998) ("The requirement that jurisdiction be established as a threshold matter springs from the nature and limits of the judicial power of the United States and is inflexible and without exception." (internal quotation marks and alteration omitted)).  Accordingly, the Court must first address Plaintiffs' Motion to Remand, which argues that this Court lacks subject-matter jurisdiction over the instant action.

*v. Dairy Farmers of Am., Inc.*, 727 F. Supp. 2d 604, 607 (W.D. Ky. 2010) (applying the fraudulent joinder doctrine to plaintiffs).

Citing various district court decisions, BPX argues that this Court should not apply the fraudulent joinder doctrine here. *See* Pls.' Mot. at 15. In its Response, Cameron asserts that district courts in this circuit have, in assessing diversity jurisdiction, disregarded the citizenship of fraudulently joined, non-diverse plaintiffs. *See* Def.'s Resp. at 16. Cameron specifically cites *Kansas State University v. Prince*, 673 F. Supp. 2d 1287 (D. Kan. 2009), in support of applying the fraudulent joinder doctrine to plaintiffs. In *Prince*, the district court explained that it "believes that in an appropriate case such as this [declaratory judgment action], the Tenth Circuit would apply the fraudulent joinder doctrine to a non-diverse plaintiff, as there is 'no logic in prohibiting plaintiffs from defeating diversity jurisdiction by fraudulently joining [non-diverse] defendants, but allowing them to do so through fraudulently joining [non-diverse] plaintiffs.'" *Prince*, 673 F. Supp. 2d at 1294 (quoting *Grennell v. W.S. Life Ins. Co.,* 298 F.Supp.2d 390, 395-400 (S.D.W. Va. 2004)).[4]

This Court is persuaded, though, by the reasoning of the district courts that decline to apply the fraudulent joinder doctrine to plaintiffs in light of, in particular, the belief that

---

[4] To the Court's research, two other district courts in this circuit have assumed without deciding that the fraudulent joinder doctrine applies to plaintiffs. *See Rainbow Commc'ns, LLC v. Landover Wireless Corp.*, No. CIV-19-02187, 2019 WL 3239348, at *6 (D. Kan. July 18, 2019); *Wolf Creek Nuclear Operating Corp. v. Framatome ANP, Inc.*, 416 F. Supp. 2d 1081, 1086 (D. Kan. 2006). In two other cases, district judges in this circuit, including a judge of this Court, have applied the fraudulent joinder doctrine to a plaintiff without engaging in an analysis of whether application of the doctrine to plaintiffs is appropriate. *See Flotek Indus., Inc. v. Vinson*, No. CIV-05-599-C, 2005 WL 2396503, at *1 (W.D. Okla. Sept. 28, 2005); *Tomson v. Am. Zurich Ins. Co.*, No. CIV-12-01964, 2013 WL 1189656, at *2 (D. Colo. Mar. 21, 2013). In the absence of analysis regarding whether the application

federal jurisdiction should not be expanded absent clear statutory directive and the structural difference between cases with fraudulently joined plaintiffs and those with fraudulently joined defendants.  On the issue of limited federal jurisdiction, the Northern District of Alabama has explained:

> [T]he majority of cases hold that the doctrine of fraudulent joinder applies equally to plaintiffs, as well as to defendants.  Even so, most of those cases provide scant reasoning to support their decisions.  Even the cases that include supportive reasoning rely primarily upon logic, essentially holding that fraudulent joinder should apply to plaintiffs because there is no reason *not* to do so.  That logical appeal might otherwise be persuasive, but it cannot hold up in the face of the Eleventh Circuit's clear directive to construe removal statutes narrowly, and to resolve any doubts in favor of remand.  Absent any clear directive from the Eleventh Circuit, and in light of the split among other courts that have considered the issue, the best that can be said is that the answer is unclear or, in the words of the Northern District of Ohio, there is a "legal ambiguity."  Such an ambiguity must be resolved so as to not unnecessarily expand the exercise of federal jurisdiction.

*Breland Homes, LLC v. Wrigley*, No. CIV-18-1350, 2019 WL 1466239, at *10 (N.D. Ala. Apr. 3, 2019) (internal citation omitted) (emphasis in original).  Like the Eleventh Circuit, the Tenth Circuit has clearly instructed that "[r]emoval statutes are to be strictly construed, and all doubts are to be resolved against removal."  *Fajen v. Found. Rsrv. Ins. Co.*, 683 F.2d 331, 333 (10th Cir. 1982) (internal citation omitted).

On the issue of the structural difference between cases with fraudulently joined plaintiffs and those with fraudulently joined defendants, the same judge of the Northern District of Alabama has explained that there is also "a pragmatic reason to apply different rules."  *Breland Homes, LLC*, 2019 WL 1466239, at 11.  Defendants may move to dismiss

---

of the fraudulent joinder doctrine to plaintiffs is appropriate, the Court does not find any of these cases to be persuasive.

the frivolous claims of a non-diverse plaintiff in state court and then, assuming the frivolous claims are dismissed, remove the action to federal court. *See id*.; *see also Reeves v. Pfizer, Inc.*, 880 F. Supp. 2d 926, 929 (S.D. Ill. 2012) (declining to extend the fraudulent joinder doctrine to plaintiffs and noting that defendant "may very well have a viable statute of limitations defense, but they will need to bring it before the state court"); *Myers Indus., Inc.*, 2013 WL 4431250, at *3 (declining to extend the fraudulent joinder doctrine to plaintiffs and noting state courts are best equipped to determine whether a state-law claim is colorable). The option to move to dismiss would not be available "in the context of the alleged fraudulent joinder of a *defendant*," however. *Breland Homes, LLC*, 2019 WL 1466239, at *11 (emphasis in original).

> A state court defendant who wanted to remove a case to federal court, but who was prevented from doing so by the inclusion of another, non-diverse defendant, would have no standing to move to dismiss the claims against the other defendant. Instead, its only recourse would be to go ahead with the removal and argue that the other defendant had been fraudulently joined.

*Id.*

Accordingly, given the pragmatic reasons to limit application of the fraudulent joinder doctrine to defendants and the absence of Tenth Circuit authority concluding that extension of the doctrine to plaintiffs is appropriate, the Court resolves all doubts against removal and declines to apply the doctrine of fraudulent joinder to Plaintiff BPX. Therefore, the Court may not disregard the citizenship of BPX in assessing whether the Court has diversity jurisdiction under 28 U.S.C. § 1332(a). And because BPX and

Cameron are both citizens of the State of Texas, this action does not satisfy the requirements for federal diversity jurisdiction set out in 28 U.S.C. § 1332(a).

CONCLUSION

For the reasons set forth above, the Court:

(1) concludes that there is not complete diversity of parties as required to establish jurisdiction under 28 U.S.C. § 1332(a) and, therefore, GRANTS Plaintiffs' Motion to Remand (Doc. Nos. 32, 33);

(2) DENIES AS MOOT the Defendant's pending Motion to Dismiss (Doc. No. 62) because the Court lacks subject-matter jurisdiction over this action;

(3) REMANDS this matter to the District Court of Oklahoma County, Oklahoma; and

(4) DIRECTS the Clerk of this Court to send a certified copy of this Order to the Clerk of the state court to which this matter is remanded.

IT IS SO ORDERED this 29th day of September, 2023.

CHARLES B. GOODWIN
United States District Judge